**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

FEB 0 2 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TEXAS A&M UNIVERSITY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. _____ |
| | § | |
| SEATTLE SEAHAWKS, INC., SEATTLE | § | |
| PROFESSIONAL FOOTBALL, INC., | § | |
| FOOTBALL NORTHWEST LLC | § | **H·  06  -0347** |
| | § | |
| Defendants. | § | |

### NOTICE OF REMOVAL

TO:    THE CLERK OF THE ABOVE ENTITLED COURT

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441(a) and (b) and § 1446(a), Defendant Football Northwest LLC ("FNW") timely removes to this Court the state court action described below:

1.    <u>The Lawsuit.</u>    On January 30, 2006, Texas A&M University, Plaintiff, commenced an action in the 85th Judicial of Brazos County, entitled *Texas A&M University v. Seattle Seahawks, Inc., et al.* filed under Cause No. 06-000231-CV-85 ("Lawsuit") alleging trademark infringement.    Attached hereto are copies of Plaintiff's Original Petition, Jury Demand, and Application for Temporary Restraining Order and Temporary and Permanent Injunctions (**Exhibit A**); the Temporary Restraining Order entered by the state court on January 30, 2006 (**Exhibit B**); List of All Counsel of Record (**Exhibit C**); the docket sheet in the Lawsuit (**Exhibit D**); Citations (**Exhibit E**); and Index of Matters Filed (**Exhibit F**).

2.    <u>Timeliness of Removal.</u>    Defendant FNW received a copy of Plaintiff's Original Petition on January 31, 2006.    Removal is timely under 28 U.S.C. § 1446(b), because FNW files this Notice within thirty days after it received Plaintiff's Original Petition, the initial pleading setting forth Plaintiff's claims for relief.

999901 000005 HOUSTON 438502.1

Dockets.Justia.com

3.  <u>Diversity Jurisdiction.</u>    Defendant FNW is a Washington limited liability company with its principal place of business at 11220 NE 53rd Street, Kirkland, Washington. The other defendants named in the Lawsuit ("Seattle Seahawks, Inc." and "Seattle Professional Football, Inc.") are alleged to be Washington corporations. *See* **Exhibit A** (Petition at ¶¶ 8, 9). Plaintiff is a public university organized under the laws of Texas. *Id.* at ¶ 7. Given that plaintiff and defendant FNW are citizens of different states and plaintiff seeks "actual damages, treble damages, costs of this action, and reasonable attorney's fees" that exceed $75,000 on information and belief, *see* **Exhibit A** (Petition at ¶¶ 49, 53), this Court has original diversity jurisdiction of the Lawsuit under 28 U.S.C. § 1332(a), and removal is thus proper under 28 U.S.C. § 1441(a).

4.  <u>Federal Question Jurisdiction.</u>    In the Lawsuit, Plaintiff has alleged trademark-related claims under the Lanham Act, *see* **Exhibit A** (Petition at ¶¶ 21-29, 40-53).   Because Plaintiff alleges claims under the Lanham Act, this Court has original jurisdiction under 28 U.S.C. §§ 1331 (conferring "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States") and 1338 (conferring "original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks.").   Therefore, the Lawsuit is also removable on grounds of federal question jurisdiction. 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under . . . laws of the United States shall be removable without regard to the citizenship or residence of the parties.").

In its complaint, Plaintiff also asserts claims based on "common law trademarks." **Exhibit A** (Petition at ¶¶ 30-39). The Lawsuit is removable even with these claims asserted under state law. *See* 28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed.").

5.  <u>All Defendants Have Joined in Removal.</u>  All Defendants consent to and join in this removal.

999901 000005 HOUSTON 438502.1

6.    All pleadings, process, orders, and other filings in the state court action are attached to this notice as required by 28 U.S.C. 1446(a).

7.    Venue is proper in this district under 28 U.S.C. 1441(a) because this division embraces Brazos County where the removed action has been pending.

8.    Defendant FNW is filing a copy of this Notice of Removal with the clerk of the state court where the action is pending.

DATED this 2nd day of February 2006.

Respectfully submitted,

J. Michael Bell
Federal Admission No. 5574
State Bar No. 02079200
333 Clay Street, Suite 3300
Houston, Texas 77002-4499
713-654-8111 – Telephone
713-654-1871 – Facsimile

ATTORNEY-IN-CHARGE FOR DEFENDANT
FOOTBALL NORTHWEST LLC

OF COUNSEL:

Jill W. Young
State Bar No. 00797670
THOMPSON & KNIGHT LLP
333 Clay Street, Suite 3300
Houston, Texas 77002-4499
713-654-8111 – Telephone
713-654-1871 – Facsimile

Tim J. Filer
Jeffrey S. Miller
FOSTER PEPPER PLLC
34th Floor, 1111 Third Avenue
Seattle, Washington 98101
206-447-6408

3

999901 000005 HOUSTON 438502.1

Davis Watson
PAYNE, WATSON, MILLER, MALECHEK & SCHERR, P.C.
P. O. Box 6900
Bryan, Texas 77805-6900
979-774-5257

## CERTIFICATE OF SERVICE

I certify that on this ⅔ day of February, 2006, a true and correct copy of the above

and foregoing instrument was served on all counsel of record herein, as follows, in accordance

with the *Federal Rules of Civil Procedure*:

> Sanford E. Warren, Jr.
> Mike Baggett
> R. Scott Rhoades
> Tanya D. Henderson
> Jennifer L. Murphy
> Winstead Sechrest & Minick P.C.
> 5400 Renaissance Tower
> 1201 Elm Street
> Dallas, TX 75270-2199
>
> Bill Youngkin
> P.O. Box 4806
> Bryan, TX 77805

_____
J. Michael Bell

999901 000005 HOUSTON 438502.1





EXHIBIT

A

CAUSE NO. _06-000231-CV-85_

| | | |
|---|---|---|
| **TEXAS A&M UNIVERSITY** | § | IN THE DISTRICT COURT |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | OF BRAZOS COUNTY, TEXAS |
| **SEATTLE SEAHAWKS, INC.,** | § | |
| **SEATTLE PROFESSIONAL** | § | |
| **FOOTBALL, INC., and FOOTBALL** | § | |
| **NORTHWEST, LLC** | § | |
| | § | |
| **Defendants.** | § | _____ JUDICIAL DISTRICT |

FILED
o'clock_____M
JAN 3 0 2006
MARC HAMLIN, DIST CLERK
Brazos County, Texas
By_____, Deputy

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIONS

Plaintiff Texas A&M University ("Texas A&M") files this Original Petition, Jury Demand, and Application for Temporary Restraining Order and Temporary and Permanent Injunctions ("Petition") against Seattle Seahawks, Inc., Seattle Professional Football, Inc., and Football Northwest, LLC (collectively referred to as "Defendants" or "the Seattle Seahawks"), and would respectfully show the Court as follows:

### I.

### PRELIMINARY STATEMENT

1.    Texas A&M is a university rooted in tradition, honor, and pride. Dating back to January 2, 1922, the "12TH MAN" is one of the most revered, inviolate, and time-honored Texas A&M traditions. Through Texas A&M's continuous use of the "12TH MAN" for over eighty (80) years, Texas A&M has acquired common law trademark rights to this mark on a variety of goods and services including towels, flags, shirts, buttons, and other assorted merchandise. As further evidence of trademark rights to the "12TH MAN," the United States Patent and Trademark Office

granted three trademarks to Texas A&M for its world-renowned marks, "12TH MAN," Registration Nos. 1,948,306 and 1,612,053, and "12TH MANIA!," Registration No. 2,189,229, covering a variety of goods and services, including towels, flags, clothing, and other assorted merchandise. Both the common law and federal trademarks (collectively referred to as Texas A&M's "12TH MAN" marks) give Texas A&M the exclusive right to sell, offer to sell, advertise, announce, promote, distribute, market, and use Texas A&M's "12TH MAN" marks.

2.    The Seattle Seahawks stole Texas A&M's "12TH MAN" marks and are intentionally and willfully infringing Texas A&M's "12TH MAN" trademarks by distributing, marketing, advertising, selling, and promoting merchandise emblazoned with Texas A&M's "12TH MAN" marks. Interestingly, the Seattle Seahawks' infringing use of Texas A&M's "12TH MAN" marks coincided with the arrival of Mike Clark, the Seattle Seahawks' strength and conditioning coach who was formerly employed as a coach at Texas A&M, and Rocky Bernard, the Seattle Seahawk defensive lineman who played football at Texas A&M.

3.    Furthermore, the Seattle Seahawks' use of Texas A&M's famous "12TH MAN" and "12TH MANIA!" marks without authorization dilutes the distinctive quality of and tarnishes the public image of "12TH MAN" and "12TH MANIA!," thereby harming Texas A&M's reputation.

4.    Despite repeated requests by Texas A&M that the Seattle Seahawks cease and desist using Texas A&M's "12TH MAN" marks, the Seattle Seahawks refuse to do so. Now, on the eve of the Super Bowl, the Seattle Seahawks continue: (1) to intentionally and willfully display infringing flags, notably one from the top of the world famous Seattle Space Needle, bearing Texas A&M's "12TH MAN" marks; and (2) to intentionally and willfully distribute, market, advertise, sale, and promote infringing merchandise (e.g., towels, shirts, flags, buttons, and other assorted merchandise) bearing Texas A&M's "12TH MAN" marks.

5.    Texas A&M files this lawsuit to protect its famous "12TH MAN" marks and respectfully requests this Court prevent the Seattle Seahawks (and anyone in privity with the Seattle Seahawks) from marketing, selling, offering for sale, distributing, advertising, using as promotional material, announcing, and/or performing any other act that uses Texas A&M's "12TH MAN" marks or any colorable imitation thereof. Texas A&M respectfully requests a Temporary Restraining Order and preliminary and permanent injunctive relief because Texas A&M faces irreparable harm with an audience of over one (1) billion people worldwide scheduled to watch the Super Bowl. The dilution and harm to Texas A&M's "12TH MAN" marks during the Super Bowl alone would be catastrophic and immeasurable economically.

## II.

## DISCOVERY CONTROL PLAN

6.    Plaintiff asserts that discovery in this case should be conducted under Level Two (2) of the Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

## III.

## PARTIES

**A.    Plaintiff**

7.    Plaintiff Texas A&M University is a public university located in Brazos County, College Station, Texas, 77843. Through Texas A&M's continuous use of the "12TH MAN" for over eighty (80) years, Texas A&M has acquired common law trademark rights to the "12TH MAN" mark on a variety of goods and services including towels, flags, shirts, buttons, and other assorted merchandise. The United States Patent and Trademark Office granted three trademarks to Texas A&M for its world-renowned marks, "12TH MAN," Reg. Nos. 1,948,306 and 1,612,053, and "12TH MANIA!," Reg. No. 2,189,229, covering a variety of goods and services, including towels, flags, shirts, buttons, drinking containers, jewelry, and other assorted

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIONS          Page 3

merchandise. Both the common law and federal trademarks (collectively referred to as Texas A&M's "12TH MAN" marks) give Texas A&M the exclusive right to sell, offer to sell, advertise, announce, promote, distribute, market, and use Texas A&M's "12TH MAN" marks.

**B.    Defendants**

8.    Defendant Seattle Seahawks, Inc., is a Washington corporation with its principal place of business located at 11220 NE 53rd Street, Kirkland, WA, 98033. Seattle Seahawks, Inc. is a non-resident of the State of Texas and is engaged in business in the State of Texas by selling (and offering for sale) products to Texas residents in Texas. Further, the Seattle Seahawks engage in activities in the State of Texas. Seattle Seahawks, Inc. does not maintain a place of regular business in Texas or a registered agent upon whom service may be affected. Based on the foregoing, Seattle Seahawks, Inc. may be served with process in accordance with Texas Civil Practice and Remedies Code § 17.044 by serving the Secretary of State as agent for process for Seattle Seahawks, Inc. and to be forwarded by the Secretary of State to its Vice President Lance Lopes at his regular business address at 11220 NE 53rd Street, Kirkland, WA, 98033-7505.

9.    Defendant Seattle Professional Football, Inc., is a Washington corporation with its principal place of business located at 11220 NE 53rd Street, Kirkland, WA, 98033. Seattle Professional Football, Inc. is a non-resident of the State of Texas and is engaged in business in the State of Texas by selling (and offering for sale) products to Texas residents in Texas. Further, the Seattle Professional Football, Inc. engages in activities in the State of Texas. Seattle Professional Football, Inc. does not maintain a place of regular business in Texas or a registered agent upon whom service may be affected. Based on the foregoing, Seattle Professional Football, Inc. may be served with process in accordance with Texas Civil Practice and Remedies Code § 17.044 by serving the Secretary of State as agent for process for Seattle Professional Football, Inc. and to be forwarded by the Secretary of State to its President Bob Whitsett at his

regular business address at 11220 NE 53rd Street, Kirkland, WA, 98033-7505.

10.    Defendant Football Northwest, LLC, is a Washington corporation with its principal place of business located at 11220 NE 53rd Street, Kirkland, WA, 98033. Football Northwest, LLC, is a non-resident of the State of Texas and is engaged in business in the State of Texas by selling (and offering for sale) products to Texas residents in Texas. Further, Football Northwest, LLC engages in activities in the State of Texas. Football Northwest, LLC, does not maintain a place of regular business in Texas or a registered agent upon whom service may be affected. Based on the foregoing, Football Northwest, LLC, may be served with process in accordance with Texas Civil Practice and Remedies Code § 17.044 by serving the Secretary of State as agent for process for Football Northwest, LLC, and to be forwarded by the Secretary of State to its Registered Agent Lance Lopes at his regular business address at 11220 NE 53rd Street, Kirkland, WA, 98033-7505.

## IV.

## JURISDICTION & VENUE

11.    This is an action for federal trademark infringement, federal dilution, Texas state law dilution, and common law trademark infringement. This Honorable Court has jurisdiction over this case in that it contains a request for the recovery of damages which are within the jurisdictional limits of this Court.

12.    Pursuant to Section 15.002(a)(4) of the Texas Civil Practice and Remedies Code, venue is proper in Brazos County, Texas, because Texas A&M is located in Brazos County, Texas, and subdivisions (1), (2), and (3) do not apply to this lawsuit.

## V.

## FACTUAL BACKGROUND

A.    The Origins of Texas A&M's "12TH MAN."

13.    Texas A&M is a university rooted in tradition, honor, and pride. Perhaps one of the most revered, inviolate, and time-honored traditions is that of the "12TH MAN." Most graduates of Texas A&M can tell the story of the "12TH MAN" as is set forth in the Affidavit of Mike Huddleston, attached hereto as Exhibit 1 and incorporated herein for all purposes. (Huddleston Aff., ¶¶ 3-4).

14.    The tradition of the "12TH MAN" was born on January 2, 1922, when an underdog Texas A&M team was playing Centre College, then the nation's top ranked football team. As the hard fought game wore on, and Texas A&M dug deeply into their limited reserves, Coach Dana X. Bible remembered a member of the football squad who was not in uniform. This "12TH MAN" was in the press box during the game helping reporters identify the Texas A&M football players. (Huddleston Aff., ¶ 4).

15.    The name of the "12TH MAN" was E. King Gill ("Gill"), and he was a former football player who was currently only playing basketball. Gill was called in from the stands, suited up, and stood ready throughout the rest of the football game against Centre College, which Texas A&M finally won 22-14. (Huddleston Aff., ¶ 4).

16.    When the game ended, Gill was the only man left standing on the sidelines for Texas A&M. Gill later said, "I wish I could say that I went in and ran for the winning touchdown, but I did not. I simply stood by in case my team needed me."

17.    Gill's gesture was more than enough for the Texas A&M football team. Although Gill did not play in the game, he had accepted the call to help his team. Gill came to be thought

of as the "12TH MAN" because he stood ready for duty in the event that the eleven Texas A&M football players on the gridiron needed assistance. (Huddleston Aff., ¶ 4).

18.    That spirit of readiness for service, desire to support, and enthusiasm helped kindle a flame of devotion among the entire student body; a spirit that has grown vigorously throughout the years. The entire student body at Texas A&M is "12TH MAN," and they stand during the entire Texas A&M football game to show their support. The "12TH MAN" is always in the stands waiting to be called upon if they are needed. (Huddleston Aff., ¶ 4).

19.    This tradition took on a new look in the 1980s when Coach Jackie Sherrill started The "12TH MAN" Kick-Off Team composed of regular students through open tryouts. This "12TH MAN" team performed very well and held opponents to one of the lowest yards per return. averages in the league.

20.    Later, Coach R.C. Slocum changed the team to allow only one representative of the "12TH MAN" team to perform the kick-off.

**B.    Texas A&M Trademark Rights to "12TH MAN" and "12TH MANIA" Marks.**

21.    Through Texas A&M's continuous use of the "12TH MAN" for over eighty (80) years, Texas A&M has acquired common law trademark rights to this mark on a variety of goods and services including towels, flags, shirts, buttons, and other assorted merchandise.

22.    The Patent and Trademark Office also granted three trademarks to Texas A&M for its world-renowned marks, "12TH MAN," Registration Nos. 1,948,306 and 1,612,053, and "12TH MANIA!," Registration No. 2,189,229, covering a variety of goods and services, including towels, flags, shirts, buttons, and other assorted merchandise. (Huddleston Aff., ¶¶ 5-7).

23.    Both the common law and federal trademarks give Texas A&M the exclusive right to sell, offer to sell, advertise, announce, promote, distribute, market, and use Texas A&M's "12TH MAN" marks.

C.    **The Seattle Seahawks Intentionally Infringe Texas A&M's "12TH MAN" Marks.**

24.    The Seattle Seahawks have been using Texas A&M's "12TH MAN" marks in advertisements, on their website, and on merchandise including shirts, towels, buttons, jerseys, and flags.  The Seattle Seahawks are advertising the "12TH MAN" marks on their website with at least twenty-five (25) references to the "12TH MAN" marks, and the Seattle Seahawks' pro shop sells merchandise bearing the "12TH MAN" marks.   The extent of their infringement was summarized in an article by the Fort Worth Star Telegram, a true and correct copy of which is attached hereto as Exhibit 2.

25.    The Seattle Seahawks raised "12TH MAN" flags on national television at their football games and at ceremonies placing a "12TH MAN" flag atop the world famous Seattle Space Needle.  A "12TH MAN" flag also waives atop the Seattle Seahawks' stadium.  (Huddleston Aff., ¶ 8; Exhibit 3).   The Seattle Seahawks distributed "12TH MAN" towels to the people attending the NFC Championship Football game held on January 23, 2006.  (Huddleston Aff., ¶ 8; Exhibit 4).  The Seattle Seahawks have also distributed "12TH MAN" buttons during the NFC Divisional playoff game held on January 16, 2006.  (Huddleston Aff., ¶ 8; Exhibit 5).

26.    The website of the Seattle Seahawks' booster club offers "12TH MAN" wallpaper for computers.  (Exhibit 2).  Other merchandise being sold bearing the "12TH MAN" on internet websites include shirts, bags, jerseys, pins, pendants, buttons, towels, and even stuffed dolls. (Exhibit 6).  There is no question that this infringement by the Seattle Seahawks is increasing and is diluting Texas A&M's "12TH MAN" marks.

27.     Further, this infringement of Texas A&M's "12TH MAN" marks by the Seattle Seahawks is willful and intentional.  Texas A&M sent cease and desist letters to the Seattle Seahawks beginning in 2004, and the Seattle Seahawks responded and acknowledged that Texas A&M has a registered trademark and offered to remove the references to the "12TH MAN" marks from their website and from their magazines.  (Huddleston Aff., ¶¶ 9-10).

28.     The Seattle Seahawks use of the "12TH MAN" marks remain, and as stated above, have only increased with merchandise being sold nationwide for the upcoming Super Bowl.  As late as November 7, 2005, the Seattle Seahawks sent correspondence to Texas A&M again acknowledging Texas A&M's "12TH MAN" trademarks and Texas A&M's "desire to preserve its rights in its trademark" and stated that they would not use the term with the sale of any merchandise.  (Huddleston Aff., ¶ 10).

29.     The Seattle Seahawks have only provided empty promises to stop the use, and they have actually increased their infringing uses of Texas A&M's "12TH MAN" marks.  There will be more and more use of Texas A&M's "12TH MAN" marks with the upcoming SuperBowl game, with millions of products infringing on Texas A&M's "12TH MAN" marks being sold and with over a billion viewers watching the improper use and dilution of Texas A&M's "12TH MAN" marks at the Super Bowl.  It is clear that unless the Seattle Seahawks are restrained from further use of Texas A&M's "12TH MAN" marks, Texas A&M will suffer irreparable harm.

## VI.

## CLAIMS

**A.     Common-Law Trademark Infringement**

30.     Texas A&M repeats and realleges paragraphs 1 through 29 above, as though fully set forth herein.

31.    Through Texas A&M's continuous use of the "12TH MAN" for over eighty (80) years, Texas A&M has acquired common law trademark rights to this mark on a variety of goods and services including towels, flags, shirts, buttons, and other assorted merchandise.

32.    The common-law "12TH MAN" mark is highly distinctive and well-known, and the nation and the world have come to know and associate the "12TH MAN" mark with Texas A&M and its products.

33.    Defendant, the Seattle Seahawks, without authorization from Texas A&M, is using Texas A&M's "12TH MAN" marks in commerce: (1) to intentionally and willfully display infringing flags, notably one from the top of the world famous Seattle Space Needle; and (2) to intentionally and willfully distribute, market, advertise, announce, and promote infringing merchandise (e.g., towels, shirts, flags, buttons, and other assorted merchandise) bearing Texas A&M's "12TH MAN" marks.

34.    Defendant's use of the mark is deceptive to consumers and patrons of Texas A&M, falsely implying a connection between Defendant and Texas A&M. Defendant's action is likely to cause confusion, mistake, or deception as to the source of sponsorship of Defendant's goods or services as to a connection between the parties.

35.    Defendant's infringing conduct is deliberate and is undertaken with knowledge of Texas A&M's prior rights in the "12TH MAN" marks.

36.    The aforesaid conduct is causing Texas A&M irreparable harm for which there is no adequate remedy at law and, unless restrained, will continue to cause irreparable harm.

**B.    Texas State Law Trademark Dilution**

37.    Texas A&M repeats and realleges paragraphs 1 through 36 above, as though fully set forth herein.

38.    Texas Business & Commerce Code § 16.29 provides that "[a] person may bring

an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.  An injunction sought under this section *shall be obtained* pursuant to Rule 680 et seq. of the Texas Rules of Civil Procedure."

39.    Defendant has diluted Texas A&M's "12[TH] MAN" marks through their intentional and willful infringing use.  Texas A&M is the owner of the famous "12[TH] MAN" marks. Defendant's intentional use of Texas A&M's "12[TH] MAN" marks has diluted the "12[TH] MAN" marks, causing Texas A&M injury.

**C.    Federal Trademark Infringement**

40.    Texas A&M repeats and realleges paragraphs 1 through 39 above, as though fully set forth herein.

41.    Texas A&M owns the right to license the "12[TH] MAN" marks.  The United State Patent and Trademark Office granted three trademarks to Texas A&M for its world-renowned marks, "12TH MAN," Registration Nos. 1,948,306 and 1,612,053, and "12TH MANIA!," Registration No. 2,189,229, for goods and services described herein.

42.    Since registering its trademarks in the United States Patent & Trademark Office, Texas A&M has consistently used the registered notice symbol "(R)" in association with its products.

43.    Texas A&M has continually engaged in business using the "12[TH] MAN" trademarks in commerce since November 1984 in connection with towels. Moreover, the mark "12[TH] MAN" has been used in connection with other goods and services since September 1983, and the mark "12TH MAN" has been used since 1922.  Texas A&M federal trademark registrations are incontestable pursuant to 15 U.S.C. § 1065.

44.    Texas A&M has continually engaged in business using the "12TH MANIA!" trademarks in interstate commerce since August 1996 in connection with goods and services, and the mark "12TH MANIA" has been used since 1996.

45.    Texas A&M has never given the Seattle Seahawks consent to use the marks "12TH MAN," "12TH MANIA!," or any other Texas A&M trademark in any manner or form.

46.    By continuing to market, advertise, produce, sell, and distribute new products containing Texas A&M's "12TH MAN" marks, the Seattle Seahawks are engaged in commerce. The Seattle Seahawk's continuing use of the "12TH MAN" and "12TH MANIA!" marks, in producing and selling and/or distributing towels, flags, shirts, buttons, and other products constitutes a reproduction, counterfeit, copy or colorable imitation of Texas A&M's trademarks in connection with the sale, distribution, or advertising of goods and services.

47.    The Seattle Seahawks are using the "12TH MAN" and "12TH MANIA!" marks in such a way as to be likely to cause confusion or to cause mistake or to deceive consumers as to the identity, source, origin, or sponsorship of the Seattle Seahawks' goods or services. The Seattle Seahawks' continued use of the "12TH MAN" and "12TH MANIA!" marks is done with the intention of deceiving and misleading the public at large and of wrongfully trading on the goodwill and reputation of Texas A&M in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.    Furthermore, as a result of the acts of the Seattle Seahawks alleged herein, Texas A&M is entitled to an injunction and other equitable relief as set forth below.

49.    As a result of the Seattle Seahawks' willful and intentional acts alleged herein, Texas A&M has been damaged in an amount to be proven at trial, including actual damages, treble damages, costs of this action, and reasonable attorneys' fees.

**D.    Federal Trademark Dilution**

50.    Texas A&M repeats and realleges paragraphs 1 through 49 above, as though fully set forth herein.

51.    Texas A&M's "12TH MAN" and "12TH MANIA!," federal trademarks are famous and distinctive.

52.    The Seattle Seahawks' use of Texas A&M's "12TH MAN" marks have been for the Seattle Seahawks own improper commercial gain. The Seattle Seahawks' use of Texas A&M's "12TH MAN" marks without authorization dilutes the distinctive quality of and tarnishes the public image of "12TH MAN" marks and harms Texas A&M's reputation.  The Seattle Seahawks willfully and intentionally trades on, dilutes, and tarnishes Texas A&M's "12TH MAN" marks and Texas A&M's reputation, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

53.    Texas A&M has been injured by the Seattle Seahawks wrongful conduct and is therefore entitled to relief, including without limitation damages, treble damages, costs, and injunctive relief, as set forth below.

**E.    Application For Injunctive Relief**

**1.    <u>Temporary Restraining Order</u>**

54.    Texas A&M repeats and realleges paragraphs 1 through 53 above, as though fully set forth herein.

55.    The Seattle Seahawks refuse to cease and desist using Texas A&M's "12TH MAN" marks and continue to distribute, display, and merchandise goods bearing Texas A&M's "12TH MAN" marks.

56.    In order to prohibit and prevent injury to Texas A&M's business reputation and dilution of the distinct quality of Texas A&M's "12TH MAN" marks, Texas A&M seeks a

Temporary Restraining Order enjoining the Seattle Seahawks, their agents, servants, employees and representatives and all other persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise from using, selling, offering for sale, disseminating, distributing, issuing, promoting, announcing, marketing, or advertising any products, goods or services which relate in any way to Texas A&M's "12TH MAN" marks and from engaging in any activity connected with Texas A&M's "12TH MAN" marks.

### 2.  Temporary Injunction

57.    Texas A&M repeats and realleges paragraphs 1 through 56 above, as though fully set forth herein.

58.    Texas A&M seeks a Temporary Injunction extending the effect of the Temporary Restraining Order until a judgment is entered herein.

### 3.  Permanent Injunction

59.    Texas A&M repeats and realleges paragraphs 1 through 58 above, as though fully set forth herein.

60.    Texas A&M seeks a Permanent Injunction following a trial hereof extending the effect of the Temporary Injunction requested herein.

61.    Absent injunctive relief, the Seattle Seahawks will continue to use Texas A&M's "12TH MAN" marks in connection with their goods and services which will injure Texas A&M's reputation, dilute the distinctiveness of Texas A&M's "12TH MAN" marks and cause confusion as to the source of the goods or services. Texas A&M does not have an adequate remedy at law to recover the damages caused by the unauthorized use of Texas A&M's "12TH MAN" marks.

**F.     CONDITIONS PRECEDENT**

62.    All conditions precedent to the relief requested by Texas A&M herein have occurred or have been performed.

## VII.

## JURY DEMAND

63.    Texas A&M hereby requests a jury trial on all issues and claims.

## VIII.

## REQUEST FOR RELIEF

WHEREFORE, Texas A&M prays that it be awarded relief as follows:

1.    A temporary restraining order and preliminary and permanent injunction ordering the Seattle Seahawks, their agents, servants, employees and representatives and all other persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise from using, selling, offering for sale, disseminating, distributing, issuing, promoting, announcing, marketing, or advertising any products, goods or services which relate in any way to Texas A&M's "12TH MAN" marks and from engaging in any activity connected with Texas A&M's "12TH MAN" marks;

2.    Damages as prayed for herein;

3.    Reasonable attorneys' fees and costs incurred in litigating this action;

4.    Pre-judgment and post-judgment interest at the maximum legal rate; and

5.    All other relief to which Texas A&M may be justly entitled.

Respectfully,

WINSTEAD SECHREST & MINICK P.C.

SANFORD E. WARREN, JR.
Texas Bar No. 20888690
MIKE BAGGETT
Texas State Bar No. 01511300
R. SCOTT RHOADES
Texas Bar No. 90001757
TANYA D. HENDERSON
Texas Bar No. 50511706
JENNIFER L. MURPHY
Texas Bar No. 24027560

5400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270-2199
Telephone: (214) 754-5400
Fax: (214) 745-5390

BILL YOUNGKIN
State Bar No. 22226500
Post Office Box 4806
Bryan, TX 77805
Telephone: (979) 260-7030
Fax: (979) 268-3037

**ATTORNEYS FOR PLAINTIFF**

CAUSE NO. _____

| | | |
|---|---|---|
| TEXAS A&M UNIVERSITY, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | OF BRAZOS COUNTY TEXAS |
| | § | |
| SEATTLE SEAHAWKS, INC., | § | |
| SEATTLE PROFESSIONAL | § | |
| FOOTBALL, INC. and FOOTBALL | § | |
| NORTHWEST, LLC | § | |
| | § | |
| DEFENDANTS. | § | _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF MICHAEL B. HUDDLESTON

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BRAZOS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Michael B. Huddleston, who is personally known to me, and after being first duly sworn according to law upon his oath, deposed and stated as follows:

"My name is Michael B. Huddleston. I am over eighteen years of age and have never been convicted of a felony or a crime involving moral turpitude. The statements made by me in this Affidavit are based upon my personal knowledge and are true and correct.

1.    "I am currently employed by Texas A&M University ("Texas A&M") and am authorized to make this Affidavit on behalf of Texas A&M. I have been employed by Texas A&M since January 1996, and my title is currently that of Executive Director and University Contract Officer, Department of Contract Administration.   My duties as Executive Director and

**AFFIDAVIT OF MICHAEL B. HUDDLESTON**                                               **PAGE 1**

Contract Officer include, but are not limited to, monitoring and overseeing issues related to licensing of Texas A&M's intellectual property rights, including trademark rights.

2.    "I am one of the employees at Texas A&M charged with oversight and protection of Texas A&M's trademarks "12th MAN" and "12th MANIA!".

3.    "Texas A&M is a university with long standing traditions.  One of the most time-honored is that of the "12TH MAN".

4.    "Texas A&M's story of the "12th MAN" began on January 2, 1922, and as the story goes, an underdog Aggie team was playing Centre College, then the nations' top ranked football team. As the game wore on and the Aggies dug deeply into their limited reserves, Coach Dana X. Bible remembered a member of the football squad who was not in uniform. This "12th MAN", B. King Gill ("Gill"), was in the press box during the game helping reporters identify the Texas A&M football players. Gill was called from the stands, suited up, and stood ready throughout the rest of the football game against Centre College, which Texas A&M finally won 22-14. When the game ended, Gill was the only man left standing on the sidelines for the Aggies, and Gill's gesture came to be known as the "12th MAN" since he had accepted the call to help his team and stood ready for duty in the event that the eleven Texas A&M football players needed assistance. That spirit of readiness for service and desire to support has grown vigorously throughout the years, and it evolved into the entire student body at Texas A&M being known at Texas A&M as the "12th MAN" and they stand during the entire football game to show their support.  Texas A&M has also used the "12th MAN" on a variety of goods and services including towels, flags, shirts, buttons, and other assorted merchandise.

5.    "On September 4, 1990, Texas A&M University received a trademark from the United States Patent and Trademark Office for "12th MAN", Registration No. 1,612,053, for

goods and services, including bumper stickers, post cards, note cards, novelty buttons, towels, hats, t-shirts, polo-type shirts, golf shirts, sweaters, shorts, athletic uniforms, and college scholarship services. A true and correct copy of the trademark registration is attached hereto as Exhibit "A".

6.      "On January 16, 1996, Texas A&M University received a second trademark from the United States Patent and Trademark Office for "12th MAN", Registration No. 1,948,306, for goods and services, including jewelry and entertainment services, namely organizing and conducting intercollegiate sporting events. A true and correct copy of the trademark registration is attached hereto as Exhibit "B".

7.      "On September 15, 1998, Texas A&M University received a trademark from the United States Patent and Trademark Office for "12th MANIA!". Registration No. 2,189,229, for goods and services, including plastic drinking containers, glass beverage glassware, mugs, and tumblers, textiles and textile goods, namely towels and flags, clothing, namely jackets, caps, t-shirts, and shirts, and fund raising services, through direct mail solicitation, for athletics, scholarship and support. A true and correct copy of the trademark registration is attached hereto as Exhibit "C".

8.      "The Seattle Seahawks have been using the 12th MAN in advertisements, promotions on their website and on merchandise. The Seattle Seahawks have been raising the number 12 flag at their football games and on national television and on information and belief, the Seattle Seahawks have distributed 12th MAN flags during the NFC Championship Football game held on January 23, 2006 and have also distributed 12th MAN buttons during the NFC Divisional playoff game held on January 16, 2006.

9.     "Texas A&M, through counsel, sent cease and desist letters to the Seattle Seahawks beginning in 2004, and the Seattle Seahawks responded and acknowledged that Texas A&M has trademark rights in the 12th MAN and offered to remove the references to the 12th MAN off their website and from their magazines. A true and correct copy of the letter from Mark H. Zietlow, counsel for Texas A&M, to Lance A. Lopes dated December 7, 2004 is attached hereto as Exhibit "D". A true and correct copy of the letter from Lance A. Lopes to Mark H. Zietlow, counsel for Texas A&M dated December 20, 2004 is attached hereto as Exhibit "E". A true and correct copy of the letter from Mark H. Zietlow, counsel for Texas A&M, to Lance A. Lopes dated January 10, 2005 is attached hereto as Exhibit "F".

10.     "The Seattle Seahawks never pulled these references, and as late as November 7, 2005, the Seattle Seahawks sent correspondence to Texas A&M again acknowledging Texas A&M's trademark and Texas A&M's "desire to preserve its rights in its trademark" and stated that they would not use the term with the sale of any merchandise. A true and correct copy of the letter from Lance A. Lopes to Mark H. Zietlow, counsel for Texas A&M dated November 7, 2005 is attached hereto as Exhibit "G".

_Michael B. Huddleston_
Michael B. Huddleston
Texas A&M University

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this 30th____ day of January 2006.



_Caroline D. Lawson_
Notary Public for the State of Texas
My Commission Expires: _8-19-2009_

**AFFIDAVIT OF MICHAEL B. HUDDLESTON**                                      **PAGE 4**

*A*

Int. Cls.: 16, 20, 24, 25 and 36

Prior U.S. Cls.: 37, 38, 39, 42, 50 and 102

## United States Patent and Trademark Office

Reg. No. 1,612,053
Registered Sep. 4, 1990

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## 12TH MAN

TEXAS A & M UNIVERSITY (TEXAS INSTITU-
TION OF HIGHER EDUCATION)
COLLEGE STATION, TX 77843

FOR: BUMPER STICKERS, POST CARDS
AND NOTE CARDS, IN CLASS 16 (U.S. CLS. 37
AND 38).
FIRST USE 9-0-1984; IN COMMERCE
9-0-1984.
FOR: NOVELTY BUTTONS, IN CLASS 20
(U.S. CL. 50).
FIRST USE 9-0-1984; IN COMMERCE
9-0-1984.
FOR: TOWELS, IN CLASS 24 (U.S. CL. 42).
FIRST USE 11-0-1984; IN COMMERCE
11-0-1984.

FOR: HATS, T-SHIRTS, POLO-TYPE SHIRTS,
GOLF SHIRTS, SWEATERS, SHORTS, AND
ATHLETIC UNIFORMS, IN CLASS 25 (U.S. CL.
39).
FIRST USE 9-0-1983; IN COMMERCE
9-0-1983.
FOR: COLLEGE SCHOLARSHIP SERVICES,
IN CLASS 36 (U.S. CL. 102).
FIRST USE 5-0-1965; IN COMMERCE
5-0-1965.

SER. NO. 74-013,898, FILED 12-26-1989.

GRACE AWH, EXAMINING ATTORNEY

$\mathcal{B}$

Int. Cls.: 14 and 41

Prior U.S. Cls.: 28 and 107

## United States Patent and Trademark Office

Reg. No. 1,948,306
Registered Jan. 16, 1996

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## 12TH MAN

TEXAS A&M UNIVERSITY (TEXAS INSTITU-
TION OF HIGHER EDUCATION)
COLLEGE STATION, TX 778431230

FOR: JEWELRY, IN CLASS 14 (U.S. CL. 28).
FIRST USE 0–0–1989; IN COMMERCE
0–0–1989.
FOR: ENTERTAINMENT SERVICES,
NAMELY ORGANIZING AND CONDUCTING

INTERCOLLEGIATE SPORTING EVENTS , IN
CLASS 41 (U.S. CL. 107).
FIRST USE 0–0–1922; IN COMMERCE
0–0–1922.
OWNER OF U.S. REG. NO. 1,612,053.

SER. NO. 74–560,726, FILED 8–12–1994.

W. A. CONN, EXAMINING ATTORNEY

C

Int. Cls.: 21, 24, 25 and 36

Prior U.S. Cls.: 2, 13, 22, 23, 29, 30, 33, 39, 40, 42, 50, 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 2,189,229

Registered Sep. 15, 1998

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## 12TH MANIA!

TEXAS A&M UNIVERSITY (TEXAS INSTITU-TION OF HIGHER EDUCATION) COLLEGE STATION, TX 778431230

FOR: PLASTIC DRINKING CONTAINERS, GLASS BEVERAGE GLASSWARE, MUGS AND TUMBLERS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 8-8-1996; IN COMMERCE 8-8-1996.

FOR: TEXTILES AND TEXTILE GOODS, NAMELY, TOWELS AND FLAGS, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 8-8-1996; IN COMMERCE 8-8-1996.

FOR: CLOTHING, NAMELY, JACKETS, CAPS, T-SHIRTS AND SHIRTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 8-8-1996; IN COMMERCE 8-8-1996.

FOR: FUND RAISING SERVICES, THROUGH DIRECT MAIL SOLICITATION, FOR ATHLET-ICS, SCHOLARSHIP AND SUPPORT , IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 8-8-1996; IN COMMERCE 8-8-1996.

OWNER OF U.S. REG. NOS. 1,612,053 AND 1,948,306.

SER. NO. 75-320,722, FILED 7-8-1997.

KELLY GRANNAN, EXAMINING ATTORNEY

$\int$

DEC-08-2004 WED 04:08 PM Licensing Resource Group     FAX NO. 6168200528          P. 02

# BUTZEL LONG

Mark H. Ziellow
T: 616 396 1835
ziellow@butzel.com

Suite 200 · 24 West 8th Street
Holland, Michigan 49423
T: 616 396 8860 F: 616 396 1771
butzel.com

Also Admitted in Ohio

December 7, 2004

Via U.S. Mail

Lance A. Lopes
Vice President,
Corporate Partnerships/Legal Affairs
Seattle Seahawks
800 Occidental Avenue S., Suite 100
Seattle, WA 98134

RE:    Texas A&M University Trademark Infringement

Dear Mr. Lopes:

Thank you for your letter, dated October 25, 2004, stating that the Seattle Seahawks would remove the references to the "12th Man®" from its website and game day magazine. In reviewing the website, as a follow-up, we still note that there are references to "12th Man®." In particular, there is a reference to "A 12th Man Salute," a "12th Man Suite Lottery," and a note titled "12th Man Bandanas" which reads "Thank you to Budweiser for providing Monday Night Football bandanas to the 12th Man!"

Furthermore, it is my understanding that the Seattle Seahawks raised the "12th Man Flag" during their nationally televised Monday Night Football game.

Please follow up on these other situations to ensure that such use is discontinued. Please confirm to me that the other uses have been discontinued as well.

Thank you for your anticipated cooperation.

Very truly yours,

Mark H. Ziellow

MHZ/smc

c:    Jack Landrigan

Detroit   Bloomfield Hills   Ann Arbor   Lansing   Holland   Boca Raton   Naples   Alliance Offices   Beijing   Shanghai   Member Lex Mundi

*E*

OCT-25-2005 TUE 05:06 PM Licensing Resource Group    FAX NO. 8188200528    P. 02

**SEAHAWKS**

DEC 2 8 2004

LANCE LOPES
Vice President
FOOTBALL PARTNERSHIPS/LEGAL AFFAIRS

December 20, 2004

Mark H. Zietlow
25 West 8th Street, Suite 200
Holland, Michigan 49423

Re: Texas A&M University Infringement

Dear Mr. Zietlow:

I am in receipt of your December 7, 2004 letter claiming that the Seahawks are infringing upon Texas A&M's trademark rights. Football Northwest LLC is the formal entity doing business as the Seattle Seahawks ("FNW").

Based upon a number of factors FNW believes it has a valid legal basis to defend its use of the "12th Man" in conjunction with its activities here in Seattle. In brief, FNW believes Texas A&M would have a difficult and expensive task of proving the essential element of confusion based upon our activities. In addition, there is the risk that the trademarked phrase could be deemed too descriptive and general in nature as to be enforceable. The "12th Man" is often used in common parlance when referring to the fans of teams. Pursuing these defenses, however, will be expensive and involve risk for both parties.

As I mentioned in our phone conversation, FNW understands Texas A&M's desire to preserve its rights in its trademark the "12th Man". As such, we would suggest that a nominal rights fee be paid to Texas A&M for a specific, narrow and limited use of the phrase. Specifically, we are seeking the right to use the term in reference to our fans as a whole in conjunction with local market activities (promotions) and stadium activities, including our pre-game flag raising ritual. We are not attempting to profit from this usage. We will abandon all usage of the term on our website. We also will not use the term in conjunction with our game day magazine title, or in the sale of any merchandise. For this limited right, we believe a one time license payment of $10,000 for a 10 year use period would be appropriate. This solution preserves your rights, limits our scope and becomes a source of income.

I look forward to your response to our proposal.

Sincerely,

Lance A. Lopes

800 Occidental Avenue S, Suite 100    Seattle, WA 98134    206.381.7800    www.seahawks.com

$F$

# BUTZEL LONG
ATTORNEYS AND COUNSELORS

Mark H. Zietlow
T 616-356 1935
zietlow@butzel.com

Suite 200 - 250 West 8th Street
Holland, Michigan 49423
T: 616-356 8860 F: 616.356.1771
butzel.com

Also Admitted in Ohio

January 10, 2005

Lance A. Lopes
Seattle Seahawks
800 Occidental Avenue S. Suite 100
Seattle, WA 98134

RE:    Texas A&M University Infringement

Dear Mr. Lopes:

Texas A&M University is continuing to review your proposal in your letter dated December 20, 2004. We estimate it may take up to 60 days to evaluate the proposal. We will get back to you with a response as soon as the review process is completed.

Please understand that this letter is not to be construed as a waiver or release of any of the claims and demands made in our letter dated December 7, 2004. Texas A&M University continues to be of the opinion that the use of "12th Man®" by the Seattle Seahawks violates the Federal, State and common law rights of Texas A&M University in 12th Man®."

Very truly yours,

Butzel Long

Mark H. Zietlow

cc:  Jack Landrigan

6



LANCE LOPES
VICE PRESIDENT
CORPORATE PARTNERSHIPS/LEGAL AFFAIRS

November 7, 2005

Mr. Mark Zietlow
25 West 8th Street, Suite 200
Holland, MI 49423

Re: Texas A&M University Trademark Infringement

Dear Mr. Zietlow:

I am in receipt of your October 27 letter. If you will recall, last December the Seahawks made your client a generous offer to permit a limited use of the "12th Man" in its marketing/branding activities. You responded to us in a letter dated January 10, 2005, that you would take up to 60 days to consider the offer and respond back to us. We have yet to hear back on that offer.

Our position has not changed. We retired the "12" jersey in early 1980's as a tribute to our fans' support and it has hung in our rafters ever since. FNW believes it has a valid legal basis to defend its use of the "12th Man" in conjunction with its activities in Seattle. Pursuing these defenses, however, will be expensive and involve risk for both parties.

As I mentioned in our phone conversation last year and reiterated in the letter, FNW understands Texas A&M's desire to preserve its rights in its trademark the "12th Man". As such, we once again suggest the best solution is for a rights fee to be paid to Texas A&M for a specific and limited use of the phrase. Specifically, we are seeking the right to use the term in reference to our fans in conjunction with market and branding activities, advertising campaigns and promotions and in-stadium activities. We have no desire to profit financially from the use. We will not use the term in conjunction with the sale of any merchandise. We will not allow the term to be used in a derogatory manner. The Seahawks simply desire to use the term as a general designation to honor our fans and recognize their support.

For this limited right, the Seahawks are willing to pay your client a one time license payment of $10,000 for a 10 year use. This solution preserves your rights, limits our scope and becomes a source of income.

I look forward to your response to our proposal.

Sincerely,

Lance A. Lopes