**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TEXAS A&M UNIVERSITY,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 4:06-CV-00347** |
| | § | |
| **v.** | § | |
| | § | **The Honorable Judge Ewing Werlein, Jr.** |
| **SEATTLE SEAHAWKS, INC.,** | § | |
| **SEATTLE PROFESSIONAL** | § | |
| **FOOTBALL, INC., and** | § | |
| **FOOTBALL NORTHWEST, LLC,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

    A.  Stage of the Proceedings ................................................................... 3

    B.  Nature of the Case ............................................................................ 3

    C.  Statement of Alleged Facts .............................................................. 5

II.  ISSUE TO BE RULED ON ............................................................................. 7

III.  ARGUMENT & AUTHORITIES ................................................................... 8

    A.  Venue is Proper in the Southern District of Texas ....................... 8

    B.  The Relevant Factors for a Venue Analysis Under 28 U.S.C. §1404(a)
       Demonstrate That Defendant's Motion to Transfer Venue Should Be
       Denied. ................................................................................................ 8

        1.  TEXAS A&M'S CHOICE OF FORUM IS TO BE GIVEN GREAT WEIGHT
           AND, UNDER THE FACTS OF THE PRESENT CASE, SHOULD NOT BE
           DISTURBED. ............................................................................. 10

        2.  AVAILABILITY AND CONVENIENCE OF WITNESSES AND PARTIES DOES
           NOT FAVOR TRANSFER OF THIS ACTION. ...................................... 12

        3.  DEFENDANTS' MOTION IS FATALLY DEFECTIVE INASMUCH AS
           SEATTLE FAILS TO IDENTIFY KEY WITNESSES ALLEGEDLY
           INCONVENIENCED. ..................................................................... 13

        4.  SIMILARLY, THE ALLEGED LOCATION OF INFORMATION AND SOURCES
           OF PROOF DO NOT WARRANT TRANSFER. ..................................... 15

        5.  THE POSSIBILITY OF DELAY, AS DEMONSTRATED BY DEFENDANTS'
           OWN EXHIBIT AND THE POSSIBILITY OF PREJUDICE REQUIRES DENIAL
           OF DEFENDANTS' MOTION. ......................................................... 17

        6.  LOCAL INTEREST IN RESOLVING THE DISPUTE WARRANTS DENIAL OF
           DEFENDANTS' MOTION. ............................................................. 18

        7.  A TEXAS COURT IS BETTER EQUIPPED TO APPLY TEXAS LAW. ........... 18

IV.  CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car Co.,*
   238 F.3d 378 (5th Cir. 2001) ..................................................................................4

*Becnel v. Smile Community Action Agency, Inc.,*
   207 F.Supp.2d 520 (M.D. La. 2001) ......................................................................13

*Box v. Ameritrust Texas, N.A.,*
   810 F.Supp. 776 (E.D. Tex. 1992)..........................................................................10

*Brock v. Baskin-Robbins USA Co.,*
   113 F.Supp.2d 1078 (E.D. Tex. 2000)....................................................................13

*Continental Airlines, Inc. v. American Airlines, Inc.,*
   805 F.Supp. 1392 (S.D. Tex. 1992).............................................................13, 14, 15

*Dupre v. Spanier Marine Corp.,*
   810 F.Supp. 823 (S.D. Tex. 1993).................................................11, 12, 14, 15

*Enserch Int'l Exploration, Inc. v. Attock Oil Co., Ltd.,*
   656 F.Supp. 1162 (N.D. Tex. 1987) ................................................................11, 12

*Exxon Corp. v. Oxxford Clothes, Inc.,*
   109 F.3d 1070 (5th Cir. 1997) ................................................................................4

*Gulf Oil Co. v. Gilbert,*
   330 U.S. 501 (1947) ...................................................................................9, 10, 16

*Home Savings of America v. Home Savings Ass'n,*
   219 USPQ 157 (S.D. Tex. 1982) ...............................................................................4

*Humble Oil & Refining Co. v. Bell Marine Services, Inc.,*
   321 F.2d 53 (5th Cir. 1963) ....................................................................................9

*Hupp v. Siroflex of America, Inc.,*
   848 F.Supp. 744 (S.D. Tex. 1994)..........................................................................12

*Icon Indus. Controls v. Cimetrix, Inc.,*
   921 F.Supp. 375 (W.D. La. 1996) ..........................................................................12

*In re Triton Sec. Lit.,*
   70 F.Supp.2d 678 (E.D. Tex. 1999).........................................................................13

*Jarvis Christian College v. Exxon Corp.*,
    845 F.2d 523 (5th Cir. 1988) ........................................................................8, 9

*Menendez Rodriguez v. Pan American*,
    311 F.2d 429 (5th Cir. 1962), *vacated on other grounds*,
    376 U.S. 779, 84 S. Ct. 1130 (1964) .......................................................10

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ...................................................................................10

*Sanders v. State Street Bank and Trust Co.*,
    813 F.Supp. 529 (S.D. Tex. 1993).........................................9, 11, 12, 18

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970) ....................................................................10, 11

*Stabler v. New York Times, Inc.*,
    569 F.Supp. 1131 (S.D. Tex. 1983)......................................................10, 11

*Time, Inc. v. Manning*,
    366 F.2d 690 (5th Cir. 1966) ..........................................................9, 10, 18

*United Sonics, Inc. v. Shock*,
    661 F.Supp. 681 (W.D. Tex. 1986) .....................................................10, 11

*Van Dusen v. Barrack*,
    376 U.S. 612, 84 S.Ct. 805 (1964) .........................................................9, 12

## Statutes

15 U.S.C. § 1125(a) .............................................................................................8

15 U.S.C. §1114 ..................................................................................................8

15 U.S.C. §1125(c) ..........................................................................................4, 9

28 U.S.C. §§1391 (a)-(c) ....................................................................................9

28 U.S.C. §1404(a) ...................................................................................passim

Tex. Bus. & Comm. Code § 16.29 .....................................................................9

## Treatises

15 WRIGHT & MILLER, §3851.............................................................................16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TEXAS A&M UNIVERSITY,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 4:06-CV-00347** |
| | § | |
| **v.** | § | |
| | § | **The Honorable Judge Ewing Werlein, Jr.** |
| **SEATTLE SEAHAWKS, INC.,** | § | |
| **SEATTLE PROFESSIONAL** | § | |
| **FOOTBALL, INC., and** | § | |
| **FOOTBALL NORTHWEST, LLC,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiff, Texas A&M University ("Plaintiff" or "Texas A&M"), opposes the motion of Defendant, Football Northwest, LLC (hereinafter collectively referred to as "Defendants" or "Seahawks")[1] to transfer venue of this action from the Southern District of Texas to the Western District of Washington.  The relevant facts and law demonstrate that the Southern District of Texas is the appropriate venue for the present litigation.

I.     **INTRODUCTION**

Texas A&M seeks to protect the rights that it owns in its widely known and highly publicized mark "12TH MAN."  The mark was initially adopted in 1922 as a remembrance of E. King Gill and his spirit of readiness to serve Texas A&M's football team in time of need.  *See* Affidavit of Michael D. Huddleston (the "Huddleston Aff.") ¶4, Exhibit to Plaintiff's Original

---

[1] Defendant, Football Northwest, LLC, has indicated that Seattle Seahawks, Inc. and Seattle Professional Football, Inc. are now defunct and not associated with the issues of the present litigation.  Investigation prior to filing suit suggested that those entities were still in existence.  Plaintiff will voluntarily dismiss those parties without prejudice once it has verified the representation of Football Northwest, LLC.  For the purposes of the present memorandum, however, Plaintiff will continue to refer to the Defendants in the plural.

Petition. The legend of E. King Gill has grown and the mark 12TH MAN now signifies not only the enthusiastic support of Texas A&M's entire student body, but also a general spirit of readiness for service and a desire to support all activities at Texas A&M University. *Id.* Consistent with over eighty years of continuous use of the mark 12TH MAN, Plaintiff enjoys substantial goodwill and fame in the mark 12TH MAN in Texas and elsewhere. Plaintiff is also the owner of two incontestable federal registrations for the mark 12TH MAN and the owner of an incontestable federal registration for the mark 12TH MANIA! for various goods and services. *Id.* at ¶¶5-7.

Defendants have engaged in a campaign to appropriate the mark 12TH MAN for their own use in connection with professional football services that are broadcast via television throughout the United States (often including Texas) and are disseminated on the Internet (which also reaches Texas). Consistent with this appropriation of Plaintiff's marks, Defendants have caused the slogan "HOME OF THE 12TH MAN" to be placed in a prominent position on their stadium wherein it could and would be seen by television cameras broadcasting a game over the air waves or on the Internet. *See* Declaration of Michael Huddleston (the "Huddleston Decl.") ¶9, attached hereto as **Exhibit A**. Defendants now seek to have this case transferred to the State of Washington. In doing so, Defendants mistakenly ask the Court to focus only on the issue of liability under the Federal Trademark Act (the Lanham Act) relating to the harm occurring in the State of Washington, apparently to the exclusion of other issues in this case - - such as proof of the fame of Plaintiff's marks and proof of dilution of Plaintiff's marks in Texas under the Texas state law of dilution. As such, Defendants' motion reduces to an attempt to shift any inconvenience from Defendants to Plaintiff. Moreover, Seattle's motion to transfer venue appears to be little more than a naked attempt to find a more friendly forum to judge its actions.

2

The law makes clear that Plaintiff's choice of forum is to be given great deference and should rarely be disturbed. Moreover, the facts of this case support Plaintiff's choice of forum. Accordingly, a review of the nature of this case in light of the facts and the applicable law demonstrates that this forum is the appropriate venue for the present litigation. Indeed, the legend of E. King Gill and the basis for Plaintiff's adoption of the mark 12TH MAN begins in Texas and, as such, this case should remain in Texas.

### A.    Stage of the Proceedings

Texas A&M filed its Original Petition, Jury Demand, and Application for Temporary Restraining Order and Temporary and Permanent Injunction (hereinafter the "Complaint") against Defendants on January 30, 2006 in the 85th Judicial District Court of Brazos County, Texas. On February 2, 2006, Defendants removed the lawsuit to this Court on diversity jurisdiction grounds under 28 U.S.C. §1332 and on federal question grounds under 28 U.S.C. §1331. On March 2, 2006, Defendants filed their Motion to Transfer Venue, seeking to transfer this lawsuit to the Western District of Washington under 28 U.S.C. §1404(a).[2]

### B.    Nature of the Case

The present case is a suit for trademark infringement and dilution under federal and state law, and for unfair competition under federal and state law. More particularly, Plaintiff asserts that its marks, 12TH MAN and 12TH MANIA! (hereinafter collectively referred to as the "12[TH] MAN Marks"), which Plaintiff has used since 1922 are not only distinctive of and signify Texas A&M and its football program, but are famous for Texas A&M's school spirit and related sports programs. Accordingly, the use by Defendants of the identical mark 12TH MAN in sponsorship and promotion of the Seattle Seahawks' football team infringes Plaintiff's rights in its 12TH

---

[2] By agreement between the parties, Defendants were provided extensions of time to answer or otherwise plead until April 28, 2006, and Texas A&M was provided extensions on the deadline to respond to Plaintiff's Motion to Transfer Venue until April 21, 2006.

MAN Marks and is likely to cause dilution of the distinctive quality of the 12TH MAN Marks in Texas and elsewhere.

To prevail in a trademark or dilution suit, a trademark owner must prove that it owns the requisite protectable interest in the trademark and that the defendant's actions infringe upon that protectable interest. *See, Home Savings of America v. Home Savings Ass'n*, 219 USPQ 157 (S.D. Tex. 1982).[3]  While registrations constitute prima facie or even conclusive evidence of such rights for statutory trademark infringement causes of action, a plaintiff must fully establish its use and the extent of its use of the marks at issue for the common law infringement, common law unfair competition, and dilution causes of action.  This is especially true for the dilution causes of action for which the plaintiff must prove that the mark is highly distinctive under the Texas statute, *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997), and that the mark is famous under the federal statute.  15 U.S.C. §1125(c); *Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car Co.*, 238 F.3d 378 (5th Cir. 2001).  This means that the majority of the key witnesses and the overwhelming majority of the documents in any trademark suit will often be located with the plaintiff at the plaintiff's principal place of business.

Similarly, because dilution deals with a loss of distinctiveness of a mark, the greatest harm will often be felt and will occur where the plaintiff enjoys the greatest fame and distinctiveness.  That is, while a defendant's use may originate elsewhere, if it travels or is likely to travel to the location of the plaintiff, then it can cause harm to the distinctiveness of the plaintiff's mark(s) in and around the location of the plaintiff.  For this aspect of a defendant's alleged liability, therefore, the key witnesses are, again, located in and around the plaintiff. Hence, while it may be true that witnesses and documents relating to a trademark defendant's own (allegedly infringing) use are located proximate to the defendant, this is only one aspect of a

---

[3] Attached hereto as **Exhibit B**, is a copy of this case for the Court's reference.

trademark case. Consideration of this aspect, alone, fails to consider the often larger evidentiary issues of the plaintiff's rights and of certain aspects of harm to the plaintiff. In the present case, a review of Plaintiff's anticipated key witnesses that can be identified at this time demonstrates that "convenience" dictates that the case remain in the Southern District. Moreover, when the judicially mandated deference is accorded to Plaintiff's choice of forum, it becomes clear that Defendants' request for transfer should be denied.

### C.     Statement of Alleged Facts.

As set forth in more detail in the Complaint, Texas A&M has used the mark 12TH MAN for over 80 years in connection with various goods and services, including, but not limited to: jewelry, bumper stickers, novelty buttons, towels, hats, shirts, athletic uniforms, sporting events and college scholarship services. Consistent with Plaintiff's long use of the mark and in addition to its common law rights in the mark, Plaintiff has obtained three federal trademark registrations for its 12TH MAN Marks, which registrations are incontestable under federal trademark law.

In violation of Texas A&M's rights in its 12TH MAN Marks, Defendants, all Washington companies, have been using the mark 12TH MAN in connection with the offering of professional football entertainment services. Such use includes, but is not limited to placement of the slogan "HOME OF THE 12TH MAN" on their stadium. Consistent with the adoption and use of the mark by Defendants, it appears that fans and corporate sponsors of Defendants' entertainment services have similarly commenced use of the 12TH MAN mark, and have caused increased usage of the mark 12TH MAN, including on branded merchandise to be sold on the Internet. Defendants' use of the mark 12TH MAN began long after Plaintiff's rights in the 12TH MAN Marks were established.

In an effort to amicably resolve this dispute, the parties have been exchanging correspondence and communications for well over a year. During this time, Defendants have agreed to cease the use of the mark 12TH MAN in various mediums. However, Defendants failed to satisfactorily cease their infringing activity, thus, forcing Plaintiff to file this suit for trademark infringement.

While suit was initially filed in a state court within the judicial district for the Southern District of Texas, removal to the federal district court for the Southern District of Texas is appropriate and should not be disturbed. Texas A&M has suffered, and continues to suffer, an irreparable harm as a result of Defendants' use of the mark 12TH MAN. While harm is occurring in Washington, the most substantial damage from Defendants' infringing activities is occurring in this very district. Texas A&M is a Texas public university located in College Station, Texas where the 12TH MAN Marks and corresponding goodwill are an integral part of the school's treasured tradition and spirit. The University's location here in the Southern District of Texas is the focal point of its use of the 12TH MAN Marks. Texas A&M maintains its books, records, and other property at its offices in College Station, Texas. *See* Huddleston Decl. at ¶3. Texas A&M's officers and employees are located in the Southern District of Texas, and all of Texas A&M's presently identified key witnesses are located in the Southern District of Texas. *Id.* at ¶4. Moreover, because Texas A&M is a state funded institution, the Texas Attorney General's office overseas any litigation involving Texas A&M. *Id.* at ¶5. The attorneys with the Texas Attorney General's office would be greatly inconvenienced by a transfer of venue to Western Washington.

College Station, Texas is also home to the 12TH MAN Foundation which is one of the most well-respected fundraising organizations in college athletics. *Id.* at ¶6. The 12TH MAN

Foundation is an integral part of Texas A&M's strong relationship with its alumni and fan base, and is extremely successful at generating private donations for funding scholarships, programs, and facilities for Texas A&M. *Id.*

College Station is also home to the 12TH MAN Team Rewards program. *Id.* at ¶7. This program, in keeping with the tradition, honor and pride associated with the 12TH MAN mark plays an important role in maintaining a high level of fan attendance at all of Texas A&M's sporting events. *Id.* The program also generates both support and funding for Texas A&M's athletics through integral ties to outside sponsors including, without limitation, Best Buy, Suzuki, Bennigan's, Fitzwilly's Bar and Grille, Jason's Deli, and Papa John's Pizza, to name a few. *Id.*

The University, its employees, its students, its alumni, and its Texas fan base have a strong interest in the resolution of this dispute. Indeed, the State of Texas, and more specifically, the Southern District of Texas, are focal points of Texas A&M's marketing, selling, distributing, and overall promotion of the 12TH MAN Marks. *Id.* at ¶8. Maintaining suit in the Southern District of Texas is consistent with governing law and is also based on practical considerations, including (a) Plaintiff's close ties to the Southern District of Texas and the surrounding communities, (b) the location of documents in this judicial district, (c) the location of damage to Plaintiff, and (d) the location of key party witnesses and non-party witnesses. Accordingly, this civil action should be retained in the Southern District of Texas.

## II.    ISSUE TO BE RULED ON

The issue raised by Defendants' motion is whether venue should remain in the Southern District of Texas or whether Defendants have been able to overcome the strong deference accorded Plaintiff's choice of forum, such that the case should be transferred to the Western District of Washington under 28 U.S.C. §1404(a). Whether to transfer a case under §1404(a) is a

decision that rests within the sound discretion of the trial court, and may be reviewed for abuse of discretion only. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).

**III.    ARGUMENT & AUTHORITIES**

    **A.    Venue is Proper in the Southern District of Texas.**

There is no dispute that venue is proper in the Southern District of Texas. *See* Defendants' Notice of Removal (Docket Entry No. 1) at ¶¶3, 4, and 7. In this trademark infringement suit, Texas A&M University has sued Defendants for trademark infringement, trademark dilution, and other unlawful conduct that has harmed Texas A&M's valuable goodwill in its 12TH MAN Marks. Plaintiff has chosen a proper forum, with its principal place of business in the Southern District of Texas.[4] Further, Texas A&M promotes, markets, sells, and distributes merchandise bearing the 12TH MAN marks from College Station, Texas, and from other locations dispersed throughout the Southern District of Texas. Consequently, the harm caused by Defendants' unlawful conduct, which includes causing a likelihood of confusion as to affiliation, connection, association or approval, 15 U.S.C. §§1114 and 1125(a); causing a likelihood of dilution, Tex. Bus. & Comm. Code § 16.29; and causing actual dilution, 15 U.S.C. § 1125(c), with regard to the 12TH MAN Marks, is felt in the Southern District of Texas, as well as in the State of Washington. Therefore, venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§1391 (a)-(c).

    **B.    The Relevant Factors for a Venue Analysis Under 28 U.S.C. §1404(a) Demonstrate That Defendants' Motion to Transfer Venue Should Be Denied.**

Although this Court is clearly a proper forum for this lawsuit, Defendants have requested that this Court transfer venue to the Western District of Washington pursuant to 28 U.S.C.

---

[4] While suit was initially filed in state court and later removed to federal court, for purposes of this memorandum, suit will be deemed to have been originally filed in the Southern District of Texas, as it is a proper forum.

§1404(a) for the "convenience of the parties and witnesses, and in the interest of justice." In considering requests for transfer under §1404(a), the Fifth Circuit has applied the factors articulated by the United States Supreme Court in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947). *See Humble Oil & Refining Co. v. Bell Marine Services, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The *Gulf Oil* case-specific factors can be categorized in terms of private and/or public interests. The private interest factors consider the preference and the convenience of the parties and witnesses, and include, but are not limited to: (1) plaintiff's choice of forum; (2) availability and convenience of witnesses and parties; (3) costs of obtaining attendance of witnesses; and (4) accessibility to and location of sources of proof. The public interest factors balance questions of fairness and efficiency, and include, but are not limited to: (5) the possibilities of delay and prejudice if transfer is granted; (6) local interest in resolving the dispute; and (7) the forum's familiarity with governing law. *Gulf Oil*, 330 U.S. 501. Whether to transfer a case under §1404(a) is a decision that rests within the sound discretion of the trial court. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).

It is well settled that the party moving for a change of venue bears the heavy burden of demonstrating why the forum should be changed. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805 (1964); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529, 534 (S.D. Tex. 1993). Texas A&M's choice of forum is to be given great weight and should not be disturbed unless the Defendants demonstrate that maintaining the lawsuit in the current venue is clearly outweighed by other considerations. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("the plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed). This is especially true where, as here, the Plaintiff has filed suit in its home state. *State Street*, 813 F.Supp. at 534; *see also Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (the plaintiff's choice of forum is entitled to overriding deference especially when the choice of forum relates to plaintiff's legitimate and rationale concerns). Therefore, to prevail on its Motion in this case, Defendants must demonstrate that the balance of convenience and justice substantially weighs in favor of the transfer. A proper examination of these factors reveals that the balance of factors strongly supports Plaintiff's choice of venue in the Southern District of Texas, Houston Division, and thus, in accordance with *Gulf Oil*, Defendants' motion to transfer venue should be denied.

1.    TEXAS A&M'S CHOICE OF FORUM IS TO BE GIVEN GREAT WEIGHT AND, UNDER THE FACTS OF THE PRESENT CASE, SHOULD NOT BE DISTURBED.

A plaintiff's choice of forum is given great weight and should rarely be disturbed. *Gulf Oil*, 330 U.S. at 508; *Menendez Rodriguez v. Pan American*, 311 F.2d 429, 434 (5th Cir. 1962), *vacated on other grounds*, 376 U.S. 779, 84 S. Ct. 1130 (1964); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and that choice should not be lightly disturbed.); *United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 689 (W.D. Tex. 1986) (the plaintiff's choice of forum "is most influential and should rarely be disturbed unless the balance is strongly in defendants' favor"); *Box v. Ameritrust Texas*, N.A., 810 F.Supp. 776, 780-81 (E.D. Tex. 1992); (the plaintiff's choice of forum is the primary factor to be considered in determining motions under §1404(a) and is the starting point for every motion to transfer); *Stabler v. New York Times, Inc.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983).

Stated differently, "a plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed." *Menendez Rodriguez*, 311 F.2d at 434; *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). Texas A&M has chosen the Southern District of Texas as the

10

venue for this case in view of its substantial presence in Texas, *i.e.*, for totally logical and appropriate reasons. That choice is to be highly esteemed, given great weight and should not be disturbed.

The burden of establishing that a plaintiff's choice of venue should be disturbed is a heavy burden to meet. *Stabler v. New York Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983). Unless the balance of factors **strongly** favors the moving party, the plaintiff's choice of forum generally should not be disturbed. *Shutte*, 431 F.2d at 25; *United Sonics*, 661 F.Supp. at 683. Moreover, when the requested transfer would have the practical effect of shifting of inconveniences from the moving party to the non-moving party, the requested transfer must be denied. *Sanders v. State Street Bank & Trust Co.*, 813 F.Supp. 529, 535 (S.D. Tex. 1993); *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823 (S.D. Tex. 1993). *Enserch Int'l Exploration, Inc. v. Attock Oil Co., Ltd.*, 656 F.Supp. 1162 (N.D. Tex. 1987). This is especially true where consideration of the parties' financial means suggests even greater inconvenience for the party opposing the transfer. *State Street*, 813 F.Supp. at 535.

In the present case, Defendants' motion only establishes that their (unidentified) witnesses and their documents are located in Washington and that it would be more convenient for Defendants to try the case in Washington. Defendants' arguments totally ignore the burden on Plaintiff that would be imposed by forcing Plaintiff to transport its witnesses and documents to Washington to establish its case. It also ignores any and all harm occurring in Texas.

A transfer would be far more burdensome on Texas A&M University, a state funded university, than retaining the case will be on the Defendants. Seattle is a for-profit organization that has disregarded Plaintiff's rights and adopted Plaintiff's marks to improve its fan

11

participation and increase its profits. Consistent with Fifth Circuit and Supreme Court case law, Texas A&M's choice of venue is to be highly esteemed and should not be disturbed.

### 2.    AVAILABILITY AND CONVENIENCE OF WITNESSES AND PARTIES DOES NOT FAVOR TRANSFER OF THIS ACTION.

It can generally be presumed that the most convenient district for a party to litigate its case is in or near the party's residence. *See, e.g., Dupre*, 810 F.Supp. at 826 ("It is rare in federal court that the chosen forum is the least expensive venue for every individual affiliated with the dispute."). When, as here, the Plaintiff resides in the chosen forum and the Defendants reside in the proposed transferee forum, one or the other will unavoidably be inconvenienced whether the transfer is granted or not. *See Hupp v. Siroflex of America, Inc.*, 848 F.Supp. 744, 749-750 (S.D. Tex. 1994). In such a case, the weight given to the plaintiff's choice of forum tips the balance against transfer. *Dupre*, 810 F.Supp. at 827; *Icon Indus. Controls v. Cimetrix, Inc.*, 921 F.Supp. 375, 384 (W.D. La. 1996) (denying transfer from the plaintiff's residence to the Defendants' residence because other factors did not strongly favor the transferee forum).

The convenience factor in the transfer analysis is also not the one-sided inquiry that Defendants portray it to be. It is well-settled that mere inconvenience to the Defendants is not sufficient to warrant changing the location of this lawsuit. *Van Dusen v. Barrak*, 36 U.S. 612, 634 & n.30, 84 S.Ct. 805, 818 n.30 (1964). Nor is a transfer warranted when the effect is merely to shift the inconvenience from one side to the other. *State Street*, 813 F.Supp. at 535; *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823 (S.D. Tex. 1993). *Enserch Int'l Exploration, Inc. v. Attock Oil Co., Ltd.*, 656 F.Supp. 1162 (N.D. Tex. 1987). Here, Defendants have only made general assertions that they will be inconvenienced by the current venue, and have failed to show that Plaintiff would be less inconvenienced by the venue of Defendant's choice. As such,

Defendants have fundamentally failed to meet their burden of proving that a transfer is warranted.

### 3. DEFENDANTS' MOTION IS FATALLY DEFECTIVE INASMUCH AS SEATTLE FAILS TO IDENTIFY KEY WITNESSES ALLEGEDLY INCONVENIENCED.

On more than one occasion, the Texas courts have denied a defendant's motion to transfer venue under §1404(a) when the defendant has failed to identify its key witnesses that they allege will be inconvenienced by the plaintiff's choice of forum. *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1396 (S.D. Tex. 1992) ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion **must** be denied.") (emphasis added). *Brock v. Baskin-Robbins USA Co.*, 113 F.Supp.2d 1078 (E.D. Tex. 2000); *In re Triton Sec. Lit.*, 70 F.Supp.2d 678, 688 (E.D. Tex. 1999). Indeed, as the party seeking the transfer, Defendants must clearly specify the key witnesses expected to be called and make a general statement of what their testimony will cover. *Continental Airlines*, 805 F.Supp. at 1396 (citing 15 WRIGHT & MILLER, §3851, at 425). Absent a particularized showing that the defendants will be unable to obtain key witnesses for trial and their anticipated testimony, transfer is properly denied. *Becnel v. Smile Community Action Agency, Inc.*, 207 F.Supp.2d 520 (M.D. La. 2001).

Conspicuously absent from Defendants' Motion is any reference to the identity of any of their **key** witnesses who are supposedly inconvenienced by this Southern District forum. Defendants' sole evidence in this regard is a self-serving affidavit by Defendants' counsel providing a cumulative laundry list of generalized third-party witnesses who will each purportedly testify at trial concerning the frequency of the use of the term 12TH MAN, or concerning the "request to fly the '12' flag and the frequency and occurrence thereof. *See, e.g.*, Affidavit of Jeffrey S. Miller. Over half of the witnesses listed in Mr. Miller's affidavit are

13

witnesses that, as Defendants state, "Have Flown a "12" Flag."[5]  Defendants also contend that they plan to call over 50 third-party witnesses to testify on their behalf at trial, presumably all to testify on the same matter.  This is nothing more than a transparent and cumulative attempt by the Defendants to obtain a transfer of venue through procedural hyperbole.  Courts have refused to allow this type of posturing by recognizing that the convenience-of-witness factor does not reduce to a "battle of numbers" – *i.e.*, venue is not decided solely by which party has the longer list of possible witnesses.  *Dupre*, 810 F.Supp. at 826.  Rather, the key element to be considered in determining the weight to be given to the convenience of the witnesses is the convenience to the **key** witnesses who will be called to testify at trial.  *Continental*, 805 F.Supp. at 1396-97.

Defendants have not only failed to provide a list of actual "key" witnesses, Defendants have also failed to provide any guidance on how any member of their management or other key employees will be inconvenienced by the current venue.  Moreover, Defendants' "list" includes as allegedly potential witnesses companies such as BELO Communications, a Texas company owning KHOU-TV in Houston, Texas, with its main offices in Dallas, Texas and radio stations owned by companies with a national presence, including connections to Houston, Texas, which again fails to address issues of inconvenience.  Hence, even if all of Plaintiff's witnesses and documents were not in the Southern District, Defendants' motion would still fail to meet the threshold burden of overcoming the deference due to Plaintiff's choice of forum.

---

[5] Aside from the problem that this list appears to be cumulative (and therefore entitled to limited weight, if any), the point of the list fails to address the issues in the present case. Plaintiff does not object to use of the number "12" so long as it is not inextricably tied to Plaintiff's mark "12TH MAN." Stated differently, it does not matter that fans fly a flag with a "12" on it or that Defendants retire a jersey with a "12" on it, standing alone. That "12" could refer to a mythical "12th Seahawk," to a mythical 12th dimension in fan support, or to a mythical 12th player. It is only when Defendants inextricably tie the use of "12" to Plaintiff's mark "12TH MAN" as they have done relatively recently at their stadium by using the identical slogan to that used by Plaintiff - - HOME OF THE 12TH MAN - - that use of 12 becomes potentially an issue. And then, it is an issue in the context of Defendants' infringing activity and actually evidences Defendants' wrongful inducement of fans and sponsors to infringe Plaintiff's 12TH MAN Marks.

14

Texas A&M's operations, records, and witnesses are located in the Southern District of Texas. *See* Huddleston Decl. at ¶3. Plaintiff has identified herein key witnesses who will be substantially inconvenienced by Defendants' proposed transfer of venue. *Id*. at ¶2. A transfer to the Western District of Washington would necessarily cause an impermissible "inconvenience shifting" to occur at the expense of Texas A&M (and ultimately the Texas taxpayers).

With regard to the cost of obtaining attendance of witnesses, in the present case, whether the case is litigated in the Southern District of Texas or in Western Washington, one party will bear substantially all of the cost of travel for trial. Moreover, a transfer would not alleviate the overall cost to both parties. Still further, when the parties' financial means are considered, the effective cost to Plaintiff has a considerably greater effect. With today's technological advances, it is difficult for parties such as the Defendants to establish that litigating in Texas is truly inconvenient for parties and witnesses - - as opposed to being merely less convenient for them than litigating in their own backyard. *Continental*, 805 F.Supp. at 1396; *Dupre*, 810 F.Supp. at 826. Defendants' showing certainly fails to meet this requisite burden. Accordingly, Defendants' motion should be denied.

### 4.    SIMILARLY, THE ALLEGED LOCATION OF INFORMATION AND SOURCES OF PROOF DO NOT WARRANT TRANSFER.

Defendants argue, as the alleged infringers, that their principal place of business is the appropriate forum and is the center of gravity because the witnesses and records relating to their infringing activity are located there. *See* Defendants' Memorandum at 7-9. Defendants cite selected district court decisions for the proposition that the home of the alleged infringer (usually also the place of infringement) is the critical and controlling consideration. *Id*. If Defendants' reasoning were proper or adopted, then no plaintiff would ever be able to maintain suit in any forum other than the defendant's home forum. *See Continental*, 805 F.Supp. at 1399 (holding

that while the location of defendants' acts may be a factor to consider, it is not a rule that a case must be transferred if the actions complained of occurred in another forum.). It would create a rule that, as discussed above, is contrary to the realities of a trademark suit wherein the majority of the evidence often relates to the plaintiff's longevity of use of the mark at issue and the harm felt in plaintiff's backyard where plaintiff's mark is best known. Such a result would also clearly be contrary to the Supreme Court's mandate in *Gulf Oil* that deference be given to the plaintiff's choice of forum and that the plaintiff's choice be rarely disturbed.

In the present case, while Defendants may have concocted and implemented their infringing activity in Western Washington, their infringing activity occurs nationwide through nationwide television broadcasts of their stadium which features the 12TH MAN mark, and through the resulting nationwide distribution of related paraphernalia on the Internet by fans or companies supporting Defendants. With proper deference to the Plaintiff's choice of forum, therefore, the suggestion is strong that the real center of gravity in this trademark suit is the forum in which the majority of the key witnesses for the establishment of trademark rights, as well as for the infringement, reside. In the present case, all of the key documents and witnesses relating to the Plaintiff's rights are located in Texas, in the Southern District of Texas. Additionally, many potential witnesses relating to dilution, likelihood of dilution, and likelihood of confusion are in Texas. Accordingly, the suggestion is strong that any inconvenience presented by the forum is easily surmountable and does not warrant upsetting Plaintiff's choice of forum. *See Gulf Oil*, 330 U.S. 501.

**5.　The Possibility of Delay, As Demonstrated By Defendants' Own Exhibit and the Possibility of Prejudice Requires Denial Of Defendants' Motion.**

To support its request for transfer, Defendants assert that court congestion is not a factor, stating that the median time from filing to disposition for civil cases is only 9.6 months in the Western District of Washington, while it is 9.8 months in the Southern District of Texas. *See* Exhibit B to Defendants' Memorandum. After referring to only this one statistic, Defendants argue that the factor is neutral in the transfer analysis.

Such prompt "disposition," however, occurs only when the parties settle prior to trial or upon entry of summary judgment. In the present case, Texas A&M has already engaged, unsuccessfully thus far, in discussions with Defendants, and Defendants have continued their infringing activity, despite express promises to cease at least some of the infringing activity. The relevant statistic in Defendants' Exhibit B therefore becomes the time to trial - - not the time to disposition. The time to trial in the Southern District of Texas is only 15.3 months as compared to 19.4 months in the Western District of Washington. Similarly, the percentage of civil cases in Western Washington that are over three years old is more than twice that of Southern Texas. Moreover, Western Washington has only seven (7) judges to handle the 259 civil cases pending for more than three years. Whereas, the Southern District of Texas has nineteen (19) judges to handle its 176 civil cases pending for more than three years. With 487 civil cases per judge in Western Washington compared to the 377 cases per judge in Southern Texas, the efficient administration of justice and the public interest warrant denial of Defendants' motion.

**6.    LOCAL INTEREST IN RESOLVING THE DISPUTE WARRANTS DENIAL OF DEFENDANTS' MOTION.**

The local interest in resolving this dispute in this forum favors Plaintiff's choice of forum. Indeed, Texas A&M students, staff, faculty, and a large alumni and fan base are located in this judicial district. The damage caused by Defendants' actions is felt in this judicial district and, as such, this Court has a compelling interest in this case. The court with the greatest nexus to this case is the one closest to the place where the Plaintiff resides and feels part of its injury, not the place where the Defendants concocted their infringing activity. *See State Street*, 813 F.Supp. at 536. Injury has been suffered in the Southern District of Texas (as well as in Washington). This Court possesses a compelling interest in ensuring that individuals who are injured within this district receive prompt and fair resolution of disputes involving their property. *Id.* Accordingly, Defendants' motion to transfer venue must be denied.

**7.    A TEXAS COURT IS BETTER EQUIPPED TO APPLY TEXAS LAW.**

While it is true that the District Court for the Western District of Washington is capable of construing Texas law, Texas law is more familiar to the District Court for the Southern District of Texas, and this Court is therefore better equipped to apply the appropriate state law. *See Time*, 366 F.2d at 698 (holding that a federal court in Louisiana presumably would be better equipped to apply the appropriate state law than would the New York district court).

**IV.    CONCLUSION**

A plaintiff's choice of forum is entitled to great deference and should not be lightly disturbed. Defendants have established that it would be more convenient for them, the alleged infringers, to have this matter transferred to the Western District of Washington. Defendants have not, however, proven that the ***balance*** of inconvenience is sufficient to warrant overturning Texas A&M's choice of forum. Accordingly, Defendants' motion should be denied.

18

Respectfully submitted,

J. DAVID CABELLO
    Texas Bar No. 03574500
    Southern District of Texas I.D. No. 3514
WILLIAM D. RAMAN
    Texas Bar No. 16492700
    Southern District of Texas I.D. No. 4117
SHERRI L. EASTLEY, *pro hac vice*
    Texas Bar No. 24036945
WONG, CABELLO, LUTSCH, RUTHERFORD &
BRUCCULERI LLP
20333 S.H. 249, Suite 600
Houston, Texas 77070
Phone: (832) 446-2410
Fax:    (832) 446-2424

Bill Youngkin
Texas Bar No. 22226500
Southern District of Texas I.D. No.1643
YOUNGKIN & ASSOCIATES
1716 Briarcrest Dr., #206
P.O. Box 4805 (77805)
Byran, Texas  77802-2700
Tel:    (979) 260-7030
Fax:    (979) 268-3037

ATTORNEYS FOR PLAINTIFF
TEXAS A&M UNIVERSITY

19

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing **Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer Venue** has been served on the following counsel of record indicated below via facsimile, and/or prepaid first class mail, and/or electronic mail and/or in accordance with the Electronic Court Filing system guidelines on this the 31st day of April, 2006:

J. Michael Bell
Jill W. Young
Thompson & Knight, LLP
333 Clay Street, Suite 3300
Houston, Texas 77002-4499
Fax: (713) 654-1871

Tim J. Filer
Jeffrey S. Miller
Foster Pepper PLLC
34th Floor, 1111 Third Avenue
Seattle, Washington 98101
Fax: (206) 447-6408

Davis Watson
Payne, Watson, Miller, Malecheck & Scherr, P.C.
P.O. Box 6900
Bryan, Texas 77805-6900

_Stacy L. Alston_

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TEXAS A&M UNIVERSITY,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 4:06-CV-00347** |
| | § | |
| **v.** | § | |
| | § | **The Honorable Judge Ewing Werlein, Jr.** |
| **SEATTLE SEAHAWKS, INC.,** | § | |
| **SEATTLE PROFESSIONAL** | § | |
| **FOOTBALL, INC., and** | § | |
| **FOOTBALL NORTHWEST, LLC,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER

This Court having considered "Defendant's Motion to Transfer Venue" to the Western District of Washington, and having considered the response thereto, finds that the motion is not supported by the relevant facts or law;

IT IS HEREBY ORDERED that the Defendants' Motion to Transfer Venue is DENIED.

SIGNED this _____, 2006.

By: _____
United States District Judge