# Exhibit B

LEXSEE 219 USPQ 157

**Home Savings of America v. Home Savings Association**

**No. H-82-1280**

**United States District Court for the Southern District Texas, Houston Division**

*1982 U.S. Dist. LEXIS 10269; 219 U.S.P.Q. (BNA) 157*

**September 14, 1982**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff federal savings and loan association sought to preliminarily enjoin defendant savings and loan association from using a shield logo in certain trade areas. Defendant sought to preliminarily enjoin plaintiff from doing business under certain trade names within the same trade areas. Both parties asserted their unfair competition claims under § 43(a) of the Lanham Act, *15 U.S.C.S. § 1125*(a), and under Texas common law.

**OVERVIEW:** Plaintiff and defendant were both savings and loan associations. Defendant had been doing business in the Houston trade area since 1952 and in the Dallas area since 1978. Plaintiff entered those trade areas in 1982. Defendant sought to preliminarily enjoin plaintiff from doing business under the trade name "Home" or "Home Savings" within the Houston and Dallas markets. Plaintiff had used a shield logo as a service mark since 1955. Defendant began using a shield logo in 1978. Plaintiff sought to preliminarily enjoin defendant from using the shield logo within the Houston and Dallas markets. The court held that the evidence presented indicated that defendant was likely to prevail on the merits in the Houston market. The words "Home" and "Home Savings" were protectable because they were descriptive terms that had acquired secondary meaning in that market and actual confusion had resulted since plaintiff entered the area. The court found that plaintiff had not demonstrated a substantial likelihood that it would prevail on the merits with respect to the shield logo. The two designs were sufficiently dissimilar in appearance to avoid the likelihood of confusion among consumers.

**OUTCOME:** The court denied plaintiff's application for a preliminary injunction and granted defendant's application in part.

**COUNSEL:** [*1]

Martin R. Horn, William C. Shubert, and Spensley Horn Jubas & Lubitz, all of Los Angeles, Calif., and Albert B. Kimball, Jr., Wayne E. Webb, Jr., and Pravel, Gambrell, Hewitt, Kirk & Kimball, all of Houston, Tex., for plaintiff.

Louis T. Pirkey, J. Paul Williamson, William D. Raman, and Arnold, White & Durkee, all of Houston and Austin, Tex., for defendant.

**OPINIONBY:**

O'CONOR

**OPINION:**

O'Conor, District Judge.

Both parties to this action have moved this Court for preliminary injunctive relief. This matter was heard by the Court on July 28-30, 1982, with both parties appearing and being represented by counsel. After having heard all of the evidence, the arguments of counsel and after considering the briefs submitted by each side, the Court will grant part of the relief requested by Defendant Home Savings Association for the following reasons.

This is an unfair competition case in which two savings and loan associations seek to protect property rights and similar trade names and logos. Home Savings Association (HSA), originally Security Savings, began doing business in Houston, Texas under the name Home Savings and Loan Association in December 1952. It subsequently adopted the name [*2] Home Savings Association; however, it has continuously done business in the Houston area under the name Home Savings. The use of this mark in the Houston area has been substantially exclusive for the entire 30-year period. In 1978, HSA be-

Case 4:06-cv-00347   Document 29-3   Filed 04/21/2006   Page 3 of 5

Page 2
1982 U.S. Dist. LEXIS 10269, *; 219 U.S.P.Q. (BNA) 157

gan doing business in the Dallas area. Currently HSA operates 18 branches in the Houston trade area and one in the Dallas area.

Home Savings of America (HSOA) is the largest savings and loan association in the United States. It was founded as a state institution in California in 1889 under the name The Home Investment Building and Loan Association and its name was thereafter changed in 1922 to Home Building and Loan Association and again in 1951 to Home Savings and Loan Association. In 1981 it adopted its current name Home Savings of America, A Federal Savings and Loan Association when it was granted a federal charter by the Federal Home Loan Bank Board, HOSA now does business in several states, including Texas. In January 1982, HSOA entered the Dallas and Houston markets through the acquisition of certain ailing savings and loan associations in those cities. Since that time Plaintiff has done business in Dallas and Houston under the name [*3] Home Savings of America. HSA seeks to preliminarily enjoin HSOA from doing business under the trade name "Home" or "Home Savings" within the Houston and Dallas trade areas.

HSOA has used a shield logo design as a service mark since 1955. This shield is filled with gold filagree with the words "Home" in gold on a blue background, "Savings of America" in gold on a white background, and "America's largest" in gold on a red background. The word "Home" clearly dominates over the remaining words and the shield design itself. HSA has used several logo designs durings its existence; however, in 1978 it adopted a "star-and-ribbon" logo which is inset in a shield design. It is undisputed that HSA originally wanted to use a shield logo similar to HSOA and, thus, contacted the California based savings and loan association for permission to use the concept. This permission was denied and HSA changed its logo design to the one currently used. The "star-and-ribbon" logo consists of a gold star surrounded by oak leaf branches on a white or light gold background. The words "Home Savings Association" are superimposed in blue above a red ribbon which has written on it in white the words "building [*4] your future." As with HOSA's logo, the word "Home" dominates the design. HSOA, as plaintiff, seeks to preliminarily enjoin HSA from using the shield logo in the Houston and Dallas areas.

Before a district court may grant the extraordinary remedy of a preliminary injunction, the moving party must satisfy four prerequisites: (1) that there exists a substantial likelihood that it will ultimately prevail on the merits; (2) that it will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that such an injunction would not be adverse to public policy.

*Vision Center v. Opticks, Inc., 596 F.2d 111, 114, 202 USPQ 333, 336-37 (5th Cir. 1979)*. The function of a preliminary injunction is to preserve the status quo until the merits of the case can be adjudicated. *Morgan v. Fletcher, 518 F.2d 236, 269 (5th Cir. 1975)*. Both parties assert that they will be irreparably harmed before the merits of this case can be heard without the granting of extraordinary relief by this Court.

This Court has jurisdiction pursuant to *28 U.S.C. § § 1338*(a) and 1332(a)(1) over [*5] this unfair competition action brought under § 43(a) of the Lanham Act, *15 U.S.C. § 1125*(a) and under Texas common law. Both parties seek to assert rights and certain trademarks and thereby protect the goodwill associated with their use. Beyond cavil, each would suffer irreparable harm if its claim is found to be valid and if it is found that another entity is unlawfully infringing upon rights belonging to it. Likelihood of confusion due to the subsequent use of the confusingly similar mark by its very nature causes irreparable harm. Thus, the critical inquiry in this case is an evaluation of the evidence to determine if either or both parties have demonstrated a substantial likelihood of success on the merits.

In order to prevail on the merits in a trademark case, a party must show (1) that it is the owner of the mark sought to be protected; (2) that the mark is protectable; and (3) that another has used the mark without permission in the same or similar business creating a likelihood of confusion.

"Home Savings"

Ownership rights in a mark accrue to the first user of the mark in connection with specific goods or services. *Bluebell, Inc. v. Farrah Manufacturing Co., 508* [*6] *F.2d 1260, 1265, 185 USPQ 1, 4-5 (5th Cir. 1975)*. These rights, moreover, are protectable by different entities in different geographical trade areas. *Hanover Star Milling Co. v. Metcalf, 240 U.S. 403 (1916); United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90 (1918);* accord *ABC Stores v. T.S. Richey & Co., 280 S.W. 177* (Tex. Comm'n App. 1926, judgmt adopted). In the present case, both HSOA and HSA have engaged in business under the name "Home Savings" for many years in their respective trade areas -- HSOA in California and HSA in Texas. It was only in January 1982 when HSOA transferred into a federally chartered savings association and entered the Dallas and Houston markets that problems arose. Clearly, HSOA is the owner of the mark "Home" or "Home Savings" in California and HSA is the owner of the same marks in the Houston and Dallas, Texas areas. HSOA presented some evidence that as far back as the early 1950's some California residents who owned savings accounts with HSOA moved to Houston or Dallas and maintained the old accounts for a short

Case 4:06-cv-00347   Document 29-3   Filed 04/21/2006   Page 4 of 5

Page 3
1982 U.S. Dist. LEXIS 10269, *; 219 U.S.P.Q. (BNA) 157

period before closing them. Additionally, evidence was presented indicating that HSOA had done some regional advertising in the Wall [*7] Street Journal and the Christian Science Monitor which had limited circulation in Texas. This Court finds that such limited name exposure in the Houston and Dallas trade areas is de minimus in nature and insufficient to show a protectable interest. Moreover, the evidence overwhelmingly supports HSA's position that it exercised prior commercial use of the marks "Home" and "Home Savings" in the Houston and Dallas trade areas.

Critical to the present action is whether the words "Home" or "Home Savings" are, in fact, protectable. Four categories of terms in ascending order of strength have been created to assist courts in this regard. These are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1164, 216 USPQ 599, 602 (11th Cir. 1982); Vision Center, supra at 115, 202 USPQ at 337-38.* A generic term is the name of a particular genus or class of which an individual article or service is but a member and as such is incapable of achieving trade name protection. *Soweco, Inc. v. Shell Oil Company, 617 F.2d 1178, 1183, 207 USPQ 278, 282-83 (5th Cir. 1980).* A descriptive term, on the other hand, [*8] specifically describes a characteristic or quality of a product or service. Id. While a descriptive term is not automatically protectable, it may achieve that status when it has acquired a secondary meaning. Id.; *Vision Center, supra at 115, 202 USPQ at 337-38.*

"Home" is descriptive with respect to savings and loan services. This Court finds that it describes the general use for which money saved at such an institution will be directed. This is in contrast to the generic use of "home" referring to a residence or domicile. Therefore, if a secondary meaning is demonstrated to have attached to such a term it may be found to be protectable.

This Court finds that the evidence overwhelmingly shows that "home" and its variant "home savings" have acquired such secondary meaning in the Houston area. Secondary meaning can be established by direct or circumstantial evidence and the type of evidence which is probative includes: (1) length of time and manner of the mark's use; (2) the nature and extent of its use; and (3) the efforts made in the direction of promoting a conscious connection in the public's mind between the mark and a particular source of origin. *Volkswagenwerk Aktiengesellschaft* [*9] *v. Rickard, 492 F.2d 474, 478, 181 USPQ 611, 614 (5th Cir. 1974).*

While Defendant HSA did not present direct evidence of public recognition in the form of a public survey, see *Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 849, 165 USPQ 37, 40-41 (5th Cir. 1970),* the evidence presented satisfies the Court that HSA is likely to prevail at trial on the merits with respect to demonstrating secondary meaning for the word "Home" or its variant "Home Savings" in the Houston savings and loan trade area. The evidence shows that HSA has used the mark "Home Savings" for over 30 years in a substantially exclusive manner in Houston. The number of HSA branches in the Houston area have gradually increased with each location prominently identified as "Home Savings" through the use of multiple signs. HSA has engaged in extensive use of informational and promotional brochures and literature, newspaper advertising, and radio and television advertising in the Houston area for 30 years. Over the years HSA has expended millions of dollars in advertising and promotion of its savings and loan services under the name "Home Savings" and spent over $700,000 last year alone. Thus, HSA has [*10] demonstrated it has a protectable interest in the mark "Home" and its variant "Home Savings" in the Houston savings and loan trade area. However, the Court cannot find secondary meaning for these terms in the Dallas trade area based on the evidence presented to it. HSA has engaged in business in the Dallas trade area only since 1978 and operates only one branch there at this time. To date, advertising has been limited to local community newspapers with limited rather than widespread circulation. Moreover, signs located at one HSA branch in Dallas in addition to the advertising in local community newspapers cannot be found to create a conscious connection in the public's mind between the mark "Home" or "Home Savings" and has no protectable interest in those terms in the Dallas trade area.

The gravamen of a trademark infringement case is whether a likelihood of confusion exists between the trademarks or trade names in question. In assessing whether such likelihood exists, several factors are usually weighed: type of servicer mark; similarity of design; similarity of service; identity of service facilities and customers; similarity of advertising media used; defendant's intent [*11] to confuse; and actual confusion. *Sun Banks of Florida, INc. v. Sun Federal Savings and Loan Association, 651 F.2d 3112, 314, 211 USPQ 844, 846-47 (5th Cir. 1981); Roto-Rooter Corp. v. O'Neal, 513 F.2d 44, 45 186 USPQ 73, 74 (5th Cir. 1975).* The valuation of these factors establishes as a matter of law that likelihood of confusion exists with respect to the Houston trade area.

Both HSA and HSOA seek to utilize the same word ("Home") to designate the type of service offered to the public. These savings and loan services are offered and advertised to the public at large; therefore, it is directed at the same population of potential customers. Additionally, the evidence shows that both HSA and HSOA advertised through the smae media in the Houston area.

Case 4:06-cv-00347   Document 29-3   Filed 04/21/2006   Page 5 of 5

Page 4

1982 U.S. Dist. LEXIS 10269, *; 219 U.S.P.Q. (BNA) 157

Finally, while evidence of actual confusion is not necessary to a finding of likelihood of confusion, where it exists, it is the besty evidence. See *Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263, 205 USPQ 969, 978-79 (5th Cir. 1980).* The evidence presented at the hearing by both parties demonstrates that actual confusion has been widespread since HSOA began doing business in the Houston savings and loan market. Based [*12] on the extensive documentation of this actual confusion, this Court must find that the use of the mark "Home" or its variant "Home Savings" by HSOA in the Houston area is likely to result in confusion or mistake on the part of the users of savings and loan associations in the Houston area. Where such a likelihood of confusion is demonstrated to exist, a preliminary injunction is appropriate to maintain the status quo until such time as a trial on the merits may occur.

Shield Logo

HSOA first adopted the shield design for its logo in 1955 in connection with its savings and loan associations in California. In 1978, HSA requested permission from HSOA to use a similar shield design in Texas. Permission, however, was denied and HSA modified its logo design as described above. HSA's use of its shield design caused no problem for several years until HSOA began doing business in Texas in 1982. HSOA in this action seeks to enjoin HSA from using its star-and-ribbon logo in both Houston and Dallas claiming that it infringes upon HSOA's protectable interests in the sheild service mark. Both HSA and HSOA have sought and acquired Texas service mark registration for their respective logos. [*13]

Utilizing the same analysis as above, this Court after considering all the evidence, concludes that HOSA has not demonstrated a substantial likelihood that it will prevail on its claim in a trial on the merits. This Court finds that the two designs are sufficiently dissimilar in appearance to avoid the likelihood of confusion among the consumers of savings and loan services. The HSOA shield has a deep gold filagreed appearance while HSA's design utilizes a light gold or white shield background.Moreover, HSA's design utilizes the Texas Lone Star and a ribbon as prominent characteristics setting it apart from the HSOA design. Finally, there is very little evidence in the record to support a finding of the likelihood of confusion between the two shield logos and almost no examples of actual confusion. It appears from the record, that both shield designs may be utilized in the same trade area without causing confusion among potential consumers of savings and loan services.

In addition, this Court has found that HSA has a protectable interest in the mark "Home" and its variant "Home Savings" in the Houston trade area. This Court has previously found that the word "Home" dominates [*14] the shield design logo of both HSOA and HSA. Because injunctive relief will prohibit HSOA from utilizing the term "Home" or its variant "Home Savings" in the Houston area, its shield logo will become even more dissimilar. Therefore, this Court concludes that HSOA has failed in demonstrating that it has a substantial likelihood to prevail on the merits and its request for a preliminary injunction must be denied. It is, therefore,

Ordered, Adjudged and Decreed that in accordance with this Memorandum and Order Plaintiff's Application for a Preliminary Injunction be hereby Denied and Defendant's Application for a Preliminary Injunction be Granted In Part.